COURT OF APPEALS OF VIRGINIA


Present:  Judges Frank, Humphreys and Agee
Argued at Chesapeake, Virginia


CHARLES RUSSELL GUY

MEMORANDUM OPINION* BY
v.    Record No. 2270—01-1        JUDGE ROBERT P. FRANK
AUGUST 6, 2002
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF NORTHAMPTON COUNTY
Glen A. Tyler, Judge

Lynwood W. Lewis, Jr. (Vincent, Northam &
Lewis, on brief), for appellant.

Donald E. Jeffrey, III, Assistant Attorney
General (Jerry W. Kilgore, Attorney General,
on brief), for appellee.


Charles Russell Guy (appellant) appeals from his jury trial

convictions for aggravated sexual battery, in violation of Code

§ 18.2-67.3, and object sexual penetration, in violation of Code

§ 18.2-67.2.  On appeal, he argues the trial court (1) improperly

admitted hearsay testimony and (2) erred in overruling his motion

to strike the evidence.[1]  For the reasons stated below, we affirm

the convictions.

_____

* Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

[1] Appellant argues the trial court should have granted his
motion to strike the evidence because without inappropriately
admitted hearsay evidence, the evidence was insufficient to
convict him of these offenses.  Although appellant's
characterization of his argument is confusing, he clearly raises

M.G., an eight-year-old girl, walked over to her neighbors' house on October 15, 1999.  Her neighbors, appellant and his wife, lived in a house directly behind M.G.'s home.  After M.G. had been gone for thirty minutes, her mother walked down the lane toward appellant's home, calling out M.G.'s name.

Mother knocked on appellant's door, which was answered by his stepson.  The stepson told M.G.'s mother that the girl had been at the home, but left, and he did not know anything more about her.  Mother then continued to search for her daughter.

Suddenly, M.G. responded to her mother's calls, sounding very close and clear.  Mother found M.G. in the last shed of three that were beside appellant's house.  M.G. was lying on the floor of the shed with her pants and underwear down around her ankles.

Initially, M.G. said she was tired and lying down.  Her mother said, "[T]hat's not what you're doing," and asked, "Who was in here with you."  As M.G. pulled on her clothes, she told her mother, "You know who he is, Mama.  He's not a stranger."  She then walked out of the shed, toward the end of the row, and indicated, "[H]e's back here."  Mother walked to the side of the shed and saw appellant.  When mother confronted appellant, he denied knowing anything.

---

both a hearsay argument and a separate sufficiency argument in his appeal.  Therefore, we will address both arguments.

As mother and M.G. walked by the front door of appellant's home, M.G. became hysterical, saying, "I'm going to get in trouble," and "He's got a gun." M.G. remained hysterical after they got home.

Mother testified M.G. told her that appellant pulled her into the shed, and then licked her pubic area and put his finger into her vagina. Deputy Sheriff Mike Smith testified, when he arrived about a half-hour after mother discovered M.G., she described basically these same incidents. When M.G. testified at trial, she explained appellant pulled her into the shed, pulled her pants down, and then put his finger into her vagina. She said he did nothing else.

Mother also testified on cross-examination that M.G. had talked to her on two other occasions about the incident in the shed and was clear each time that appellant had licked her and put his finger in her. She did admit M.G. also said "Matthew" had a gun, not appellant. Mother further testified that M.G. told her appellant had pulled his penis out of his pants while they were in the shed.

The doctor who examined M.G. at the emergency room testified that she had bruising on her vagina and some tearing to her hymen. Both injuries occurred within twenty-four hours before the examination, according to the doctor. He also testified the injuries were consistent with a finger inserted

-

into the vagina, but were not likely self-inflicted or from a fall.

The SANE[2] nurse, who also examined M.G., testified the injuries were no more than six hours old. She explained the injuries could be caused by a man's finger. She also testified, although a person possibly could injure herself in this way, it would be painful to M.G. to cause these injuries to herself. She explained the injuries were inconsistent with a fall.

Appellant's wife and stepson testified that M.G. visited their home on October 15, 1999. Neither of them heard M.G. cry out nor did they see anything unusual. Wife testified appellant was at the shed when she left for work. The stepson was in the shower before M.G.'s mother knocked on the door, asking about her daughter.

Appellant's doctor testified appellant was on disability and prescribed oxygen for eighteen hours a day. The doctor admitted on cross-examination that appellant will feel better on some days and could engage in more activity on those days.

Appellant denied to the police and in his testimony at trial that he ever touched M.G.

---

[2] "SANE" is an acronym for sexual assault nurse examiner, a discipline that involves training in the medical signs of sexual assault.

ANALYSIS

Appellant argues the trial court erred by permitting mother to testify regarding statements made by M.G, which affected both his conviction for aggravated sexual battery and his sentencing. Appellant further contends the evidence was insufficient to convict him of aggravated sexual battery and object sexual penetration. The Commonwealth argues the evidence was admissible under the excited utterance exception to the hearsay rule,[3] appellant waived his objection to this evidence, and the evidence was sufficient for the convictions.

## I.  Hearsay

> Hearsay is "testimony which consists [of] a narration by one person of matters told him by another."  Williams v. Morris, 200 Va. 413, 417, 105 S.E.2d 829, 832 (1958).  The strongest justification for the exclusion of hearsay evidence is that the trier of fact has no opportunity to view the witness on cross-examination and to observe the demeanor of the out-of-court declarant to determine reliability.  C. Friend, [The Law of Evidence in Virginia] § 224 [(2d ed. 1983)]. . . .  [H]earsay evidence is admissible if it falls into one of the recognized exceptions to the hearsay rule which are based on necessity and inherent trustworthiness.  C. Friend, supra, § 230 et seq.

---

[3] The Commonwealth specifically denies the trial court admitted the evidence under the recent complaint exception to the hearsay rule.  See Code § 19.2-268.2.  Therefore, we do not discuss this exception.

-

Evans-Smith v. Commonwealth, 5 Va. App. 188, 197, 361 S.E.2d 436, 441 (1987).  See also Jenkins v. Commonwealth, 254 Va. 333, 338, 492 S.E.2d 131, 134 (1997).

Hearsay statements are admissible under the excited utterance exception when the declaration "is spontaneous and impulsive, thus guaranteeing its reliability."  Goins v. Commonwealth, 251 Va. 442, 460, 470 S.E.2d 114, 126 (1996).  See also Braxton v. Commonwealth, 26 Va. App. 176, 184, 493 S.E.2d 688, 691 (1997).  "The statement must be prompted by a startling event and be made at such time and under such circumstances as to preclude the presumption that it was made as the result of deliberation.  In addition, the declarant must have firsthand knowledge of the startling event."  Goins, 251 Va. at 460, 470 S.E.2d at 126 (citations omitted).  Admissibility of evidence as an excited utterance rests within the discretion of the trial judge.[4]  Walker v. Commonwealth, 19 Va. App. 768, 772, 454 S.E.2d 737, 740 (1995).

---

[4] Appellant correctly notes the Commonwealth has the burden to establish evidence falls within an exception when introducing the evidence at trial.  However, on appeal, we presume the judge knows and understands the law, applying the appropriate principles correctly.  Yarborough v. Commonwealth, 217 Va. 971, 978, 243 S.E.2d 286, 291 (1977) (appellate court presumes the trial court correctly applied the law to the facts); Justis v. Young, 202 Va. 631, 632, 119 S.E.2d 255, 256-57 (1961) (appellate courts presume a trial court's ruling is correct); Dunn v. Commonwealth, 20 Va. App. 217, 219-20, 456 S.E.2d 135, 136 (1995) (the judgment of a trial court is presumed correct on appeal).  Therefore, where the trial court rules evidence is admissible, but does not elaborate, appellate courts must examine the record for justification of the trial court's

-

Appellant argues M.G.'s statements to her mother do not fall within the excited utterance exception because (1) the evidence does not establish the proximate time between the startling event and the statement, (2) M.G. was not excited by the startling event when she made the statements, and (3) M.G. was responding to questions from her mother rather than making spontaneous statements.  We disagree.

The lapse of time between a startling event and a statement, while a factor to consider, is not determinative of whether to admit the statement as an excited utterance.  Doe v. Thomas, 227 Va. 466, 471, 318 S.E.2d 382, 385 (1984); Walker v. Commonwealth, 19 Va. App. 768, 772, 454 S.E.2d 737, 740 (1995). Failure of the evidence to indicate a specific length of time between the event and the statement does not preclude admission of the utterance.  See, e.g., Braxton v. Commonwealth, 26 Va. App. 176, 185, 493 S.E.2d 688, 692 (1997) (finding trial court did not err when admitting an excited utterance, even though the record did "not establish how much time elapsed" between the event and the statement).  Therefore, the fact that the testimony did not delineate a specific time between the

---

decision.  Additionally, if a defendant believes the trial court has not justified its ruling, then he must ask the judge to explain the rationale, especially when, as here, the defense objection is a one-word statement.  Id. (appellant has the burden to prove the trial court erred).

-

startling event and M.G.'s statement to her mother did not prevent the trial court from admitting the evidence.[5]

The record did disclose that M.G. made the statement to her mother a very short time after the incident. M.G. testified the assault occurred around the time appellant's wife left for work, at approximately 4:45 p.m. M.G.'s mother began looking for her around five o'clock. Given the description of events, M.G. was found and returned to her home within thirty minutes of the assault. M.G. made her statements at the time she was discovered in the shed and soon after she returned to her home. Based on this record, the trial court could conclude the utterance was "the transaction speaking through the declarant," rather than "the declarant speaking about the transaction." Royal v. Commonwealth, 12 Va. App. 928, 931, 407 S.E.2d 346, 348 (1991).

Appellant also argues the hearsay should not have been admitted, as M.G. was not excited by the startling event when she made the statements. However, the record "contains sufficient evidence to establish" that M.G. was speaking "under the agitation" of the assault when she made the statements to her mother. Goins, 251 Va. at 470, 470 S.E.2d at 126.

M.G., who was eight years old at the time, started talking to her mother after she pulled on her clothes. A reasonable

---

[5] We do not suggest that the criminal event must be the startling event that precipitates the utterance.

-

inference is that this conversation occurred almost immediately after the sexual assault. Instead of telling her mother the name of the person who had been in the shed with her, M.G. described him as "not a stranger" and pointed to where he was hiding. The trial court could find, based on her age, the immediacy of the statement, and the manner in which she identified appellant, that M.G. was under the influence of the event at the time she made her statements outside the shed.

Additionally, when M.G. and mother began to leave appellant's yard, M.G. became hysterical and overwrought. She was afraid someone with a gun would try to hurt her. When they arrived at their home moments later, M.G. would not sit still. At this point, when M.G. was in the safety of her own home, she told mother that appellant had licked her pubic area and put his finger into her vagina. Given all these factors, see Walker, 19 Va. App. at 772-74, 454 S.E.2d at 740, we cannot say the trial court abused its discretion.

Appellant also argues M.G. was responding to questions from her mother and, therefore, the trial court erred in admitting the statement under the excited utterance exception. The testimony directly contradicts appellant's assertion that M.G.'s statement about the licking was in response to a question. Her mother testified, "I did not question her." However, the initial identification of appellant as the person who was in the

-

shed with M.G. was in response to her mother's questions, "what were you doing" and "who was in here with you."

Again, no fixed rules determine whether a statement is admissible as an excited utterance. Royal, 12 Va. App. at 931, 407 S.E.2d at 348. This exception can apply when statements are made in response to questions. Martin v. Commonwealth, 4 Va. App. 438, 442, 358 S.E.2d 415, 418 (1987). The key is whether "the question or questioner suggested or influenced the response, then the declaration may lack the necessary reliability to be admitted." Id.

Mother did not frame her questions in such a manner that they suggested an answer nor did M.G.'s responses directly answer the questions. When mother asked who had been in the shed with M.G., the question did not suggest a particular name. In fact, M.G. refused to say a name, but instead said the person was someone mother knew. She then pointed in appellant's direction rather than directly answer her mother's question. More importantly, mother did not ask questions about what happened in the shed. She testified, "I did not question her. I have worked these cases before."

We find the trial court did not abuse its discretion when it admitted this evidence. We also find, even if the mother's statements on direct examination were improperly admitted, appellant waived any objection to this evidence during his cross-examination of the Commonwealth's witnesses.

-

"[W]here an accused unsuccessfully objects to evidence which he considers improper and then on his own behalf introduces evidence of the same character, he thereby waives his objection, and we cannot reverse for the alleged error." Saunders v. Commonwealth, 211 Va. 399, 401, 117 S.E.2d 637, 638 (1970) (citations omitted). While a defendant can cross-examine a witness without waiving an earlier objection, once "evidence that is similar to that to which the objection applies" is introduced by the questioning, the original objection is waived. Brant v. Commonwealth, 32 Va. App. 268, 278, 527 S.E.2d 476, 480-81 (2000). See also Newton v. Commonwealth, 29 Va. App. 433, 451, 512 S.E.2d 846, 854-55 (1999).

On cross-examination, mother initially answered questions about M.G.'s statements made on the day of the incident, to which appellant had previously objected. These questions were designed to clarify and impeach mother's testimony regarding the statements and did not waive the previous objections. However, defense counsel then asked, "Now, you had the occasion over a number of days to hear further descriptions of what had occurred from [M.G.]; is that correct?" When mother said they had, counsel asked, "Were [sic] there more than one version of the facts that were given to you by your daughter?" Mother answered, without objection or limitation, "She was very clear on the three things that she originally told me that he had put a cigarette in her mouth; that he had put his finger in her

-

private parts and that he had licked her private parts."  Since this cross-examination was beyond the scope of mother's direct testimony, her answers were introduced on appellant's "own behalf."

Additionally, Deputy Sheriff Smith testified on direct examination, without objection,[6] "[M.G.] was very much upset and scared that Mr. Guy was going to come and get her.  That's what she told me.  [M.G.] then told me that Mr. Guy had basically licked her vagina and stuck his finger in her hole."

Appellant also argues M.G.'s statement was prejudicial as to sentencing.  However, as we find the evidence was properly admitted, appellant cannot complain of prejudice from this testimony.

## II.  Sufficiency

Appellant argues the trial court should have granted his motion to set aside the verdict as "a serious credibility issue" existed about the victim's testimony.  We disagree.

Appellant's motion to the trial court argued initially that double jeopardy prevented conviction on both charges.  Counsel then admitted the evidence was sufficient "for an incident to have occurred and the jury having found guilt on the particular

---

[6] At oral argument, appellant contended he made a continuing objection at trial that included this testimony.  The record does not support this contention.

penetration offense it certainly seems that the penetration was an offense that was committed and there was no further evidence supported by testimony of any aggravated sexual battery act." Clearly, appellant conceded sufficiency of the evidence for the penetration offense, thereby waiving any sufficiency argument related to this conviction.  See Redman v. Commonwealth, 25 Va. App. 215, 220, 487 S.E.2d 269, 272 (1997).  See also Rule 5A:18.

Appellant claims several inconsistencies between the witnesses' testimony made M.G.'s testimony incredible.  However, credibility issues are in the province of the jury.  Wilson v. Commonwealth, 31 Va. App. 495, 508, 525 S.E.2d 1, 7 (2000).  The trier of fact resolves any inconsistencies in the testimony. See Barker v. Commonwealth, 230 Va. 370, 373-74, 337 S.E.2d 729, 732 (1985).  As nothing in this record suggests the witnesses were inherently incredible, we will not set aside the aggravated sexual battery conviction.

For the reasons stated above, we affirm appellant's convictions.

Affirmed.