BEALES, J.,
concurring, in part, and dissenting, in part.
In this difficult case, I have concluded that the three appellants did, in fact, preserve their objections to the “sum *240 mary” contempt proceeding used by the trial court, as the trial court explicitly ruled that the hearing was conducted under the summary contempt statute and reaffirmed that ruling after the appellants presented their written motions discussing the inconsistencies between the trial court’s stated intention to hold a summary proceeding and the actual hearing that the court held. The trial court said at the final hearing:
Although you’ve been found in summary contempt and thus have no right to counsel, I have, in fact, read all of the papers and information submitted by Mr. Miller and I’ve also reviewed a memorandum of law submitted by the National Association of Criminal Defense Lawyers.
It appears that their position is that this is not summary contempt but some other form of contempt. But I do not find their arguments persuasive.
Although this hearing was held to address appellants’ motion to stay the execution of their sentences, the trial court clearly considered the substance of appellants’ arguments regarding the procedure used by the court to find them in contempt.
Given the recent Supreme Court of Virginia decision in George v. Commonwealth, 276 Va. 767, 773, 667 S.E.2d 779, 782 (2008), although the appellants’ arguments and timing in this case were not as specific as we might prefer (and as the majority of this Court would require), I agree with the conclusion of the dissenting opinion that appellants’ argument regarding the contempt procedure used here was preserved as the trial court knew of and ruled on appellants’ objections. Contrast Nusbaum v. Berlin, 273 Va. 385, 402-04, 641 S.E.2d 494, 503-04 (2007) (finding Nusbaum specifically told the court that he was not asking that the court reconsider its contempt ruling, thus his argument regarding the court’s procedure was not preserved for appeal). Consequently, I believe appellants’ Question Presented regarding due process must be addressed.
Contempt charges are tried either with a summary proceeding wherein the trial court acts based on its own observations from the bench or with a plenary proceeding wherein evidence *241 is presented to the trial court and the accused is afforded the traditional due process rights of a defendant. Normally, this difference reflects the nature of the contempt—whether the accused’s actions were “direct,” i.e., before the court, or “indirect,” i.e., outside the presence of the court:
“The substantial difference between a direct and a constructive [indirect] contempt is one of procedure. Where the contempt is committed in the presence of the court, it is competent for it to proceed upon its own knowledge of the facts, and to punish the offender without further proof, and without issue or trial in any form.” (Citations omitted).
“In dealing with indirect contempts—that is, such as are committed not in the presence of the court—the offender must be brought before the court by a rule or some other sufficient process; but the power of the court to punish is the same in both cases.”
[Burdett v. Com., Burdett’s Case,] 103 Va. [838,] 845-46, 48 S.E. [878,] 880-81 [(1904)].
Davis v. Commonwealth, 219 Va. 395, 398, 247 S.E.2d 681, 682 (1978). Indirect or constructive contempt charges, therefore, are not brought summarily, but must proceed under a more formal procedure than an immediate adjudication by the court.
Robinson v. Commonwealth, 41 Va.App. 137, 145-46, 583 S.E.2d 60, 64 (2003) (footnote omitted; alterations in original); see also Cooke v. United States, 267 U.S. 517, 535-37, 45 S.Ct. 390, 394-95, 69 L.Ed. 767 (1925). Here, the trial court insisted that it was acting under its summary contempt authority. However, as the court took evidence from people who were not in the courtroom when the offending documents were offered into evidence, these proceedings simply could not have been summary in nature. Therefore, I would find that the trial court erred in using the procedure that it followed here.
To determine the appropriate remedy for this procedural error, the sufficiency of the evidence must be considered. Although the majority opinion cites Ferguson v. Common *242 wealth, 51 Va.App. 427, 432-33, 658 S.E.2d 692, 695 (2008) (en banc), to explain why it does not discuss the sufficiency of the evidence to support appellants’ convictions, the due process and sufficiency arguments are intertwined in this appeal, as the various issues were not in Ferguson. Id. at 430-32, 658 S.E.2d at 693-95. In addition, Ferguson’s remaining questions presented, the ones that the Court en banc did not address, related to different convictions than the one that the Court en banc did consider. Compare Ferguson v. Commonwealth, 50 Va.App. 351, 355, 649 S.E.2d 724, 726 (2007) (three-judge panel), to Ferguson, 51 Va.App. at 430-32, 658 S.E.2d at 693-95 (sitting en banc). Here, the sufficiency and due process arguments relate to the same conviction for each appellant, as evidenced by the three-judge panel’s explanation in this case that it addressed the sufficiency question only “insofar as necessary to assure that their retrial on remand will not violate double jeopardy.” Scialdone v. Commonwealth, 51 Va.App. 679, 724, 660 S.E.2d 317, 340 (2008). Finally, appellants here won their appeal at the panel level, and, as a result, the one conviction of each appellant was reversed. Conversely, the Ferguson panel opinion reversed only two of Ferguson’s convictions and affirmed the other three convictions. Ferguson did not ask for review of any of the three affirmed convictions, and the Commonwealth in appealing the panel’s decision regarding one of the felony child neglect convictions did not implicate any of the affirmed convictions or the overturned malicious wounding conviction. Therefore, in Ferguson, 51 Va.App. at 432-33, 658 S.E.2d at 695, the Court appropriately decided that reexamination of the convictions that the three-judge panel affirmed was not appropriate. That same analysis, for the foregoing reasons, does not apply in this case, and, therefore, the sufficiency of the evidence must be addressed.
In the case of appellant Scialdone, the evidence was sufficient to convict him of summary contempt, even if the evidence collected by the trial court about events that occurred outside its presence were excluded. Based solely on the documents presented to the trial court by Scialdone himself as *243 part of his client’s defense, the trial court had sufficient evidence to find him guilty of summary contempt of court. The first day of the trial, Scialdone attempted to introduce an exhibit (Exhibit 1), dated July 11, 2006, that listed the rules for a Yahoo chat room. The trial court ruled that Exhibit 1 was irrelevant as the offense for which Scialdone’s client was being prosecuted occurred in 2005. Scialdone told the court that he hoped to have the rules for the relevant time period later in the trial. After the lunch break, Scialdone attempted to introduce into evidence a second exhibit (Exhibit 2) that the trial court noted looked exactly like Exhibit 1, except the date was missing from the bottom of Exhibit 2. The court also noticed that the sign-in name for the chat room was different. Scialdone then represented to the court that Exhibit 2 was the document that his client’s “father brought to my office when [the client] was arrested.” Scialdone repeated this representation later, during argument over admission of Exhibit 2. The court then told Scialdone that he could put his client’s father on the stand to provide a foundation for admission of the document. The father testified that, after his son was arrested, he and a relative used his wife’s sign-in name, found the chat room rules, printed out two pages, stapled them together, and brought them to Taylor to use in his son’s defense. The trial court noted that Exhibit 2 had only one page and that the sign-in name was different from the name that the father testified he had used. Scialdone then claimed he first saw the document during lunch.
At this point, the trial court discovered a connection between Scialdone’s secretary and the sign-in name on Exhibit 2, told Scialdone to call his secretary and have her come to the courthouse, and also told Scialdone to have Taylor come to the courthouse. The trial court then proceeded to take testimony from the secretary and Taylor, asked questions of Scialdone and Jones, and accepted various additional documents that were printed out from the computers in Scialdone’s law office. Although both Taylor and Jones were excluded during much of this testimony, Scialdone’s counsel acknowledged during oral argument before this Court en bane that Scialdone was *244 not excluded from the courtroom by the trial court and was, therefore, present during the entire contempt proceeding as it related to him.
Although Scialdone represented to the trial court that Exhibit 2 had been provided to his office by his client’s father, that exhibit was clearly not the one provided by the father, but instead was a copy of Exhibit 1, altered to omit the date. As an attorney and an officer of the court, Scialdone owed a duty of truthfulness and honesty to the trial court. Scialdone’s cavalier representation to the trial court that Exhibit 2, a document that he wanted to present to the jury, was authentic—when it clearly was not—violated this duty. Therefore, although the trial court continued to investigate the production of Exhibit 2, that deviation from summary contempt procedure did not unduly affect Scialdone’s conviction. Even if the additional testimony and evidence were excluded, the remaining evidence was still sufficient to convict Scialdone of summary contempt of court. Therefore, as the error in these proceedings was harmless beyond a reasonable doubt in relation to Scialdone, see Dearing v. Commonwealth, 259 Va. 117, 123, 524 S.E.2d 121, 124-25 (2000), I agree with the majority opinion’s basic conclusion that his conviction should be affirmed, although I reach this conclusion for different reasons.
In contrast, the trial court found Taylor guilty of summary contempt based on the evidence produced by the witnesses that the court examined in its efforts to investigate the production of Exhibit 2—not based on the documents proffered by Scialdone in open court as evidence in the criminal jury trial over which the court was presiding. The evidence that Scialdone introduced in an attempt to have Exhibit 2 admitted did not implicate Taylor in any wrongdoing before the trial court. In fact, Taylor was not even in the courtroom until the trial court ordered Scialdone to call and tell him to come to the courtroom.[10] Only after the trial court asked *245 questions of the secretary, Scialdone, Taylor, and Jones did the trial court find that the evidence implicated Taylor in the commission of a fraud on the court. Therefore, the error in relation to Taylor’s conviction was not harmless. See id.
As the error was not harmless, and as Taylor argues that the evidence was insufficient to convict him of contempt, I believe we should also consider the sufficiency of the evidence to convict him in order to determine if the conviction should be remanded for retrial or dismissed. See, e.g., Leybourne v. Commonwealth, 222 Va. 374, 377, 282 S.E.2d 12, 14 (1981).
After reviewing the totality of the evidence against Taylor, I would find that the trial court had sufficient facts before it to allow a rational factfinder to conclude that Taylor acted in contempt of court. Taylor was the first person in the law office to see the original document, as the Ghent’s father gave the copy of the chat room’s guidelines to Taylor rather than to Scialdone. In addition, when the secretary returned to the office at the court’s direction to attempt to replicate Exhibit 2, Taylor’s computer produced a document exactly like Exhibit 2, except that document had a date at the bottom. Taylor himself admitted that he was in the office when his partner and Jones were working on the case and that he helped them prepare. He also testified that Exhibit 2 was the document given to him by the client’s father, and he claimed that, after Scialdone called and asked him to look for it, he found it on a table in their conference room during the criminal trial’s lunch break. The secretary testified that Taylor was the attorney who asked her to print off the chat room rules.
Considering all these facts, I would find that the evidence was sufficient to support the trial court’s finding of contempt. However, this evidence was not properly before the court in Taylor’s summary contempt proceedings, and Taylor was improperly excluded from the courtroom during the contempt hearing when the trial court heard important parts of the testimony concerning him. Therefore, I would reverse and remand Taylor’s conviction for a new plenary contempt hearing if the trial court or the Commonwealth be so inclined, *246 rather than dismiss the conviction outright based on the procedural errors. Id. Consequently, I must dissent from the majority opinion’s affirmation of Taylor’s conviction.
Finally, Jones also was found in contempt based on evidence presented after the trial court began taking evidence and questioning witnesses. The trial court had Jones sworn as a witness after hearing testimony from Taylor and the secretary. Jones admitted that he helped prepare the case before trial, but told the trial court that he was not present in the office during lunch. Instead, he went out to eat with his wife and her sister. Jones then admitted that he created and used the offending sign-in name that appeared on Exhibit 1 and that he printed out that document. The trial court then ordered Jones to go outside the courtroom while Scialdone presented his explanations for Exhibits 1 and 2.
Prior to the confession by Jones, the trial court did not have sufficient evidence to convict him of summary contempt. Therefore, the trial court’s error was not harmless error in relation to Jones, especially as the trial court also improperly excluded him from the courtroom during part of the contempt proceedings against him. However, unlike Taylor, the sufficiency of the evidence to convict Jones was not actually before us in his appeal, and so, consequently, I would presume that the totality of the evidence was sufficient to convict him.[11] Thus, for the foregoing reasons, I would also reverse Jones’s conviction and remand the conviction for a new plenary contempt hearing, if the trial court or the Commonwealth be so inclined. See id.
Based on the foregoing analysis, I concur in the majority opinion’s conclusion affirming the trial court’s conviction of Scialdone, although I do so on alternate grounds. However, *247 as I cannot agree with the majority opinion’s affirmation of Taylor’s and Jones’s convictions, I respectfully dissent in relation to those appeals, for the foregoing reasons.

. Although Taylor came to the courthouse with Scialdone’s secretary, the trial court excluded Taylor from the courtroom during the secretary’s and Jones’s testimony.

. Jones’s petition for appeal regarding the sufficiency of the evidence to convict was not granted. (Thus, he did not argue to the panel or to the Court en banc that the evidence was insufficient to support his conviction.) Therefore, I agree with the conclusion of the majority that, in relation to Jones, we should not consider the sufficiency of the evidence to support the contempt finding.